IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HERBERT RIFKIN,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 19-cv-5686 |
| | : | |
| **FITNESS INTERNATIONAL, LLC d/b/a** | : | |
| **LA FITNESS,** | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| **HERBERT RIFKIN,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 20-cv-4547 |
| | : | |
| **SEVENTH VENTURE, LLC, et al.,** | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                               June 15, 2022

Presently pending before the Court is Defendant Fitness International, LLC's Motion for Summary Judgment (Mot. for Summ. J., ECF No. 60), Plaintiff's Response thereto (Resp., ECF No. 61), and Defendant's Reply in support of its motion (Reply, ECF No. 63). For the reasons that follow, Defendant's motion is **GRANTED**.

### I.   FACTS[1]

Defendant Fitness International, d/b/a LA Fitness, is a gym chain that operates clubs across the United States and Canada. At all relevant times, Defendant leased a facility located at

---

[1] As required at this stage of the proceedings, the Court views the evidence in the light most favorable to Plaintiff as the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

500 Rock Hill Drive, Bensalem, Pennsylvania from Eighth Venture, LLC.  (Compl., ECF No. 60, Ex. A, at ¶ 6).

On December 22, 2017, Plaintiff visited the Bensalem LA Fitness location.  (Compl., ECF No. 60, Ex. A, at ¶ 5).  At the time, the locker room floor was lined with large tiles, which were not non-slip.  (Swank Depo., ECF No. 61, Ex. C, 50:2–7).  The locker room was divided into two separate areas: a "wet" area containing the showers, and a "dry" area containing the lockers and areas where gym members would change clothes.  There were no anti-slip mats placed on the floor of the locker room or underneath the door between the two areas at the time of Plaintiff's fall.  *Id.* at 73:17–24, 18:1–3.  Dry deck matting had previously been placed on the floor; however, at the time of the incident, the matting had been removed because it was found to be a bigger hazard than leaving the floor without mats.  *Id.* at 82:19–24, 83–84:8.  In the wet area, a permanent sign was installed on the wall to inform patrons that the floor was or could become wet.  (Swank Depo., ECF No. 63, Ex. L, at 37:17–24, 38:1–12).  Plaintiff does not present any evidence to dispute Defendant's contention that staff regularly and routinely inspected and cleaned the men's locker room throughout each day.  (Def.'s Answers to Interrogatories, ECF No. 37, Ex. D, at 5, 10, 11, 12).

While attempting to open the door between the dry and wet areas, Plaintiff slipped and fell on an unknown substance.  *Id.*; Pl.'s Depo., ECF No. 60, Ex. E, at 82:7–15.  Plaintiff testified at deposition that the substance was "slippery."  (Pl.'s Depo., ECF No. 60, Ex. E, at 82:8–10).  When asked if he knew what the substance was, Plaintiff stated: "I'm thinking it could have been water or, I don't know, soap, lotion, something.  I don't know.  But it was—something made me slip quick, you know.  I lost control."  (Pl.'s Depo., ECF No. 60, Ex. E, at 82:12–15).  He also testified that he did not see the substance on the floor before he fell because he was "looking

2

straight, walking straight, to grab the [door] handle, because this one, you have to push this door. It's heavy. It's a metal frame and it's got all brass." *Id.* at 82:24–25. Plaintiff also testified that he did not know how the substance came to be present on the floor and that he did not know how long it had been there. *Id.* at 83:4–12 ("Q: Do you know how that substance [got] there? A: No, I don't. Q: Okay. And then do you know how long it had been on the floor before you got there? A: No, I don't."). Plaintiff did not provide any description of what the substance looked like.

Patrick Swank, the district manager of the LA Fitness location and Fitness International's corporate designee, prepared an incident report following Plaintiff's fall. (Incident Report, ECF No. 61, Ex. C, at 31). In the report, Plaintiff made the following statement about the incident: "Going into through the door to the bathroom, I slipped some how [sic] and banged my head." *Id.* Swank further described the incident: "[W]hen going through the door from the dry area to the wet area of the locker room [Plaintiff] stepped back to let another member go through the door first twisting his knee, causing him to fall and hit his head on the locker face." *Id.*

As a result of the fall, Plaintiff suffered injuries including large hemarthrosis, prepatellar edema and hemorrhage, ruptured/torn quadriceps tendon, cystic lesion within the patellar tendon, and aggravation of preexisting coronary artery disease. (Compl., ECF No. 60, Ex. A, at ¶ 26). In July of 2018, Fitness International remodeled the men's locker room at the location where Plaintiff's fall occurred. (Swank Depo., ECF No. 61, Ex. C, at 49:13–16). Specifically, Fitness International replaced the previous floor tiles with smaller, non-slip tiles. *Id.* at 50:2–7. Patrick Swank testified that the remodel was prompted by an incident that occurred at a different LA Fitness facility.[2] *Id.* at 51:6–21. After this incident, it was discovered that the dry deck mats that

---

[2] Swank testified that he did not know what happened as a result of this incident or when or where the incident occurred. (Swank Depo., ECF No. 61, Ex. C, at 51:10–21). Neither party has provided any specific details regarding this incident.

had previously been placed on the locker room floor had a tendency to slip when placed over the larger tiles. *Id.* at 50:23–24; 51:1–5. Swank testified that, because of this, "[t]he dry deck matting became a bigger hazard" than simply leaving the tiles bare. *Id.* at 83:18–19. At the time of Plaintiff's fall, there were no dry deck mats in the dry area of the men's locker room. *Id.* at 73:17–24. Swank testified that dry deck mats would typically be placed in the wet areas—i.e., near the showers, toilets, and pool—but that there was "not a major need" for such mats in the dry area where people would change their clothes, nor was there any indication that such mats were necessary. *Id.* at 90:1–12. Swank also testified that there was not any matting underneath the door where Plaintiff fell because the dry deck mats did not fit under that door. *Id.* at 77:1–16.

**II.     PROCEDURAL HISTORY**

Plaintiff commenced this action by filing a Complaint against Fitness International and Fitness Sports Clubs, LLC in the Philadelphia Court of Common Pleas on November 11, 2019. (ECF No. 1, at ¶ 1). The Complaint set forth the following counts:

(1)     Negligence, premises liability against Fitness International; and

(2)     Negligence, premises liability against Fitness Sports Clubs.

(Compl., ECF No. 60, Ex. A, at Counts I & II).

On December 3, 2019, Defendants removed the case to federal court. (ECF No. 1). After Fitness Sports Clubs filed its Answer to Plaintiff's Complaint, the parties stipulated to dismiss it from the suit. (ECF No. 7; Order, ECF No. 9). On March 11, 2020, the parties consented to my jurisdiction in this matter. (ECF No. 13).

In Case No. 20-cv-4547, Eighth Venture, LLC filed a motion to consolidate the two cases, which this Court granted on March 19, 2021. (Memorandum, ECF No. 41). After several

telephone conferences and discovery motions, Defendant filed the instant Motion for Summary Judgment on October 22, 2021.  (Mot. for Summ. J., ECF No. 60).  On November 12, 2021, Plaintiff filed a Response (Resp., ECF No. 61), and on November 19, 2021, Defendant filed its Reply (Reply, ECF No. 63).

**III.    LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party.  *Id.*  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587-88 (citation omitted); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial."  *Matsushita Elec. Indus.*

*Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. *Celotex Corp.*, 477 U.S. at 322-23.

## IV.   DISCUSSION

Plaintiff raises one claim of premises liability negligence against Fitness International. In its Motion for Summary Judgment, Defendant argues Plaintiff cannot satisfy his burden of proof as to his negligence claim because he has not shown that Defendant had actual or constructive notice of any dangerous conditions in the men's locker room at the time of Plaintiff's fall.[3]

---

[3] Defendant also asserts that Plaintiff waived his claims against it by signing a Membership Agreement containing a waiver of liability provision. (Mot. for. Summ. J., ECF No. 60, at 6). In response to this argument, Plaintiff claims that he did not sign any membership agreement with Fitness International, and that the signature present on the document is not his. (Resp., ECF No. 61, at 17–19).

As Defendant notes, courts in this district and the Commonwealth of Pennsylvania have consistently upheld the type of waiver of liability provision at issue here, in a variety of cases including the same type of claim brought against this same Defendant. *See, e.g. Milshteyn v. Fitness Int'l, LLC*, No. 452 EDA 2021, 2022 Pa. Super. 30 (2022) (finding waiver of liability provision in membership agreement precluded plaintiff's claim that he slipped and fell near pool area); *Vinson v. Fitness & Sports Clubs, LLC*, 187 A.3d 253 (Pa. Super. Ct. 2018); *Toro v. Fitness Int'l, LLC*, 150 A.3d 968 (Pa. Super. 2016); *Hill v. LA Fitness*, No. 17-cv-2092, 2018 WL 1757604 (E.D. Pa. 2018). However, in this case, Plaintiff contends that he did not sign Defendant's membership agreement, testifying at his deposition that he had not seen the

(Mot. for Summ. J., ECF No. 60, at 10–11).  In response, Plaintiff argues that Defendant created the unsafe condition in the locker room by failing to install dry deck mats in the dry area and under the door, removing the dry deck mats from the wet area, and failing to install signage or wet floor warnings in the area.  (Resp., ECF No. 61, at 30).  Plaintiff also argues that Defendant had notice of the hazardous condition because it knew that the large tile in the men's locker room could be slippery, that anti-slip dry deck mats had been removed from the tiles because they created an even bigger hazard than the tiles alone, and that a mat could not fit under the door.  *Id.*  I find that Plaintiff has not shown a genuine issue of material fact as to whether Defendant had actual or constructive notice of the dangerous condition that caused Plaintiff's fall.

To prevail on a negligence claim under Pennsylvania law, "a plaintiff 'must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage.'"  *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 61 (3d Cir. 2009) (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003)).  As a guest at the LA Fitness facility, Plaintiff was an invitee of Defendant at the time of the accident.  *See* Restatement (Second) of Torts § 332 (defining "invitee" to include a "person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.").  According to the Restatement of Torts:

> A possessor of land is subject to liability for physical harm caused to invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would

---

document prior to this case and that the signature on it was not his.  (Pl.'s Depo., ECF No. 61, Ex. B, at 49:5–25, 50:1–9).  This creates a genuine issue of material fact as to whether the waiver of liability provision precludes Plaintiff's claim, and precludes summary judgment on this issue.

>discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
>(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
>(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343; *see also Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (adopting Section 343).

If the harmful condition is traceable to the possessor or his agents' acts, then the plaintiff is not required to prove any notice in order to hold the possessor liable. *Moultrey v. Great A&P Tea Co.*, 422 A.2d 593, 530 (Pa. Super. Ct. 1980) (citing *Penn v. Isaly Dairy Co.*, 198 A.2d 322, 324 (Pa. 1964); *Finney v. G. C. Murphy Co.*, 178 A.2d 719 (Pa. 1962)). If the condition is one which the possessor knows has frequently recurred, the jury may find the possessor had actual notice of the condition. *Id.* at 531 (citing *Borsa v. Great Atl. & Pac. Tea Co.*, 215 A.2d 289, 292 (Pa. Super. Ct. 1965); *Clark v. Glosser Bros. Dept. Stores*, 39 A.2d 733 (1944)). If the condition is traceable to persons other than the possessor, the jury may not consider the possessor's ultimate liability in the absence of either actual notice or constructive notice of the condition. *Id.* (citing *Katz v. John Wanamaker, Inc.*, 112 A.2d 65, 67-68 (Pa. 1955); *Parker v. McCrory Stores*, 101 A.2d 377 (Pa. 1954); *Sheridan v. Horn & Hardart*, 77 A.2d 362 (Pa. 1951); *Borsa*, 215 A.2d at 292; *Potter v. Glosser Bros. Dept. Stores*, 22 A.2d 28, 29 (Pa. Super. Ct. 1941)).

A possessor has constructive notice when "the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it." *Id.*; *Larkin v. Super Fresh Food Markets, Inc.*, 291 Fed.Appx. 483, 485 (3d Cir. 2008). Courts rely on a number of factors in determining the existence of constructive notice, including the number of persons using the premises, the frequency of such use, the nature of the harmful condition, its location on

the premises, its probable cause, and the opportunity the defendant may have had to remedy it. *Felix v. GMS, Zallie Holdings, Inc.*, 827 F.Supp.2d 430, 437 (E.D. Pa. 2011) (quoting *Hagan v. Caldor Dep't Stores*, No. 89-7810, 1991 WL 8429, at *4 (E.D. Pa. 1991)). Typically, the determination of constructive notice is made by the jury; however, where the evidence would require the jury to conjecture or guess how long the hazardous condition was present on the property, the determination must be made by the court. *Felix*, 827 F.Supp.2d at 437; *Craig v. Franklin Mills Assocs., L.P.*, 555 F.Supp.2d 547, 553 (E.D. Pa. 2008).

Taking the facts in the light most favorable to Plaintiff, Plaintiff has not established that Defendant either created or had actual or constructive notice of the hazardous condition that caused his fall. Regarding actual notice, Plaintiff has not put forward any evidence that Defendant knew this type of spill was one which frequently recurred. Plaintiff refers to a single unrelated incident at a different facility, but there is no information in the record regarding what happened in this other incident. Plaintiff cannot point to any previous slip and fall incidents that occurred in the area where he fell, and has not offered any evidence or testimony that spills occurred frequently in that location. (Swank Depo., ECF No. 61, Ex. C, at 82:19–24); *cf. Falcone v. Speedway LLC*, 2017 WL 220326, at *3 (E.D. Pa. 2017) (finding dispute of material fact existed where defendant's employee testified that she was aware of recurring spills).

Additionally, Plaintiff cannot establish that Defendant had constructive notice of the condition that caused Plaintiff's fall. Plaintiff testified that he did not see the substance before he fell and could not tell what it was. (Pl.'s Depo., ECF No. 60, Ex. E, at 82:12–15, 22–25, 83:1–12). Plaintiff has not provided any description of what the substance looked like, nor has he offered testimony from anyone else who may have seen it. Further, Plaintiff did not know how long the substance had been there before he fell. (Pl.'s Depo., ECF No. 60, Ex. E, at 83:1–12).

Because there is no evidence as to what the substance was, or how long the substance was present on the floor, Plaintiff has not adduced evidence sufficient to establish Defendant's constructive notice. *See Toro v. Fitness Int'l LLC*, 150 A.3d 968, 977 (Pa. Super. Ct. 2016) (finding gym did not have constructive notice of soapy water on floor in locker room where there was no evidence as to how long the condition existed before plaintiff fell); *David v. Pueblo Supermarket,* 740 F.2d 230, 234 (3d Cir. 1984) ("[T]he mere presence of the foreign substance does not establish whether it had been there a few seconds, a few minutes, a few hours or even a few days before the accident.").

In fact, this case involves nearly identical facts to those in *Toro*. In *Toro*, the plaintiff slipped and fell in the men's locker room inside an L.A. Fitness facility, and the Pennsylvania Superior Court granted summary judgment in favor of Fitness International, in part because the plaintiff had failed to establish that Fitness was negligent. 150 A.3d at 971. Plaintiff stated that he fell on an "unusual buildup" of "soapy water," but did not know how the floor became wet or how long it had been wet before he fell. *Id.* The general manager of the L.A. Fitness facility testified that the janitorial staff regularly inspected and maintained the locker room where the incident occurred, and that there were no reports prior to the incident that the floor in the men's locker room was wet. *Id.* The Superior Court found that the plaintiff had not shown that Fitness International had constructive notice of the wet floor because the condition was transitory and there was no evidence as to how long it existed before the plaintiff fell. *Id.* at 977. The plaintiff also argued that Fitness International was negligent as a matter of law by failing to place mats on the locker room floor; however, the court found that there was no evidence that Fitness knew or had reason to know of a harmful condition in the locker room that required it to install floor mats. *Id.* at 978. The court also noted that the plaintiff had not offered any evidence that floor

10

mats were always required in locker rooms or that there was anything about this particular floor that required them. *Id.* Finally, while the plaintiff argued that Fitness should have known that the floor would become wet on a regular basis, the court found that plaintiff had offered no evidence that the floor on which he fell tended to be wet. *Id.*

In this case, as in *Toro*, Plaintiff cannot establish the source of the substance he slipped on, or how long it was present on the men's locker room floor. Plaintiff argues nonetheless that Defendant created the hazardous condition by removing the dry deck mats from the locker room without putting out any signs or warnings that the area was slippery, and by repairing the door between the dry and wet areas in a manner that prevented a mat from being placed under the door. (Resp., ECF No. 61, at 30). First, Plaintiff in fact offers no evidence of a lack of signage, and does not contradict the testimony of Defendant's South Philadelphia operations manager that permanent wet floor signs were installed in the locker room before Plaintiff's accident. (Swank Depo., ECF No. 63, Ex. L, at 37:17–24, 38:1–12). Second, as in *Toro*, Plaintiff has not presented any evidence that Defendant knew or had reason to know of a harmful condition in the locker room that required it to install dry deck mats in the dry area, install mats under the door, or keep the dry deck mats in the wet area. As to the latter argument, Plaintiff himself points out that Defendant had removed the dry deck mats from the wet area of the locker room because the mats could slip and become a bigger hazard than leaving the tiles without matting. (Swank Depo., ECF No. 61, Ex. C, at 82:19–24, 83, 84:1–8). Further, Plaintiff offers no explanation as to why mats would be necessary in the dry area or under the door. *See Toro*, 150 A.3d at 978. As previously noted, Plaintiff cannot point to any previous slip and fall incidents in the area where Plaintiff fell, and has shown no evidence that there was anything about this particular floor that required mats. *Id.* Therefore, Plaintiff's claim that Defendant created the hazardous

condition or should have known that spills were likely to occur in the area where Plaintiff fell due solely to the lack of matting is unavailing.

Accepting Plaintiff's facts as true, Plaintiff has failed to establish that Defendant created or had notice of the hazardous condition that caused his fall. Accordingly, the Court grants Defendant's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Fitness International, LLC d/b/a/ LA Fitness.

BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge